**AMPTHILL RAYON WORKERS, INC.,**
Appellant,

v.

**E. I. DuPONT DeNEMOURS AND COMPANY, Appellee.**

No. 14388.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1970.

Decided Feb. 25, 1971.

Rehearing Denied April 2, 1971.

Haynsworth, Chief Judge, dissented and filed opinion.

Parker E. Cherry, Richmond, Va. (Purcell, Cherry & Kerns, Richmond, Va., on brief) for appellant.

Aubrey R. Bowles, Jr., Richmond, Va. (Bowles & Boyd, Richmond, Va., and John Francis Lawless, Washington, D. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

An arbitrament in favor of the appellant union Ampthill Rayon Workers, Inc., and against appellee E. I. DuPont DeNemours & Company, was refused enforcement by the District Court. This we believe error.

The arbitration treated with the union claim on behalf of group 3 textile workers at the DuPont plant in Chesterfield County, Virginia, for wages at the higher group 4 pay scale whenever performing work related to operating the machine known as the Nomex cutter-baler. The company denied this employment was within the group 4 level, and so rejected the demand.

Arbitration is a mandatory step in the procedure provided by the union-company agreement for settlement of labor disputes. Ampthill filed the instant grievance with the company on July 21, 1967. An award with opinion was returned April 17, 1969. It found as a fact that this work fell within the group 4 classification and adjudged the workers entitled to remuneration at the higher grade.

For an agreed period preceding the date on which the grievance had been

filed, the company satisfied the arbitrators' assessment of backpay, but it declined payment of the enhanced compensation accruing after the grievance date. That is the pith of this litigation.

The company's points are (1) that the award had no prospective force; but (2) if it did, then despite the union-company agreement's stipulation therefor, the union had refused to negotiate a lower classification for the machine related work, and thereby forfeited the additional remuneration. Since he agreed that the award lacked prospective effect, the District Judge dismissed the action without considering the second defense.

Compensation of the DuPont employees was specified in Article IV, Sections 1 and 2 of the union-company agreement as follows:

"Section 1. A copy of hourly wage rates and job classifications for all hourly roll employes covered by this Agreement and any subsequent revision of these rates and job classifications shall be furnished to the UNION by the COMPANY. * * *"

"Section 2. Either party to this Agreement shall have the right at any time to reopen the subject of hourly wage rates for negotiation, and the *COMPANY agrees to make no reduction in established job rates without prior negotiation with the UNION.*" (Accent added.)

\* \* \* \* \* \*

The arbitrators, after noting that the group 4 classification had been properly established for the machine work, said:

" * * * In assigning additional employees [group 3s] to the [Nomex] * * * operation, *the Company was under obligation to negotiate this job as it had the higher rated job * * * unless it * * * expected to pay the same rate.*

"If the Company at any point had negotiated this job and reached some agreement with the Union about the group 3 carrying certain of the duties formerly spelled out as group 4 duties, then the situation might be different. But in the absence of such negotiations or such agreement, *the situation is one, we feel, that calls for an award supporting the Union's positions.*" (Accents added.)

In sum, the arbitrators concluded that the company had not, before the award, established negotiations for a reclassification of this group 4 work, and until inauguration of negotiations the 3s should receive the pay of 4s.

In traverse, the company showed that it had by letter in the fall of 1967 sought, under Article IV, Section 2, "to reopen the subject of hourly wage rates for negotiation". The correspondence read as follows:

"                     October 31, 1967

Mr. E. E. Almeida, Chairman
Executive Committee
Ampthill Rayon Workers, Inc.
Richmond, Virginia

Dear Mr. Almeida:

As was acknowledged in the meeting of the Grievance Committee with W. R. Galloway, Jr., on October 26, 1967, we inadvertently did not inform the Executive Committee of a new assignment that was established in the Nomex Fibers Plant.

This letter is to rectify this oversight. Major duties and rate of pay for this new assignment are stated below:

*Finishing Machine Operator—Group 3*

*Top Day Rate—$2.80 per hour*

*Major Duties*—Stock staple cutter creel, prepare bale cartons and operate staple baler. Other duties include handling waste, sampling, preparing packing tickets, strapping, weighing and delivering completed bales to Shipping.

The above is a shift assignment that has been combined with existing group

3 Finishing Machine Operator assignments in the "Nomex" Fibers Plant.

Very truly yours,

/s/ William H. Reynolds

W. H. Reynolds

Area Supervisor

Nomex Textile Area

WHR/mss                                    "

The letter was not tendered to the arbitrators until after their award had been released and their hearing reopened for clarification of the award.

Objecting to it, the union contends that the letter is a self-serving declaration—a belated effort to cover the contested work into the group 3 category. That is to say, that since it was issued after the date of grievance, it was but an attempt to reclassify unilaterally and retroactively the positions of these workers. The union urges that under the agreement such an adjustment can be accomplished only by negotiation between the union and the company.

■ The arbitrators refused to consider the letter, saying that they were only empowered to fix the classification as of the date of grievance—July 20, 1967—and could not consider later events. This we think was correct.

■ The effect of the letter, we further conclude, is a question to be answered under the grievance procedure of the agreement. But, also, it is our opinion that by the terms of the agreement, supra, the arbitrators' award continues until the letter of October 31, 1967 or subsequent proffers are found to be acceptable requests "to reopen the subject of hourly wage rates for negotiation" pursuant to Article IV, Section 2, supra.

Therefore, the dismissal of the action is vacated, and the case is remanded for an order allowing the union to recover the awarded wage increment until the parties negotiate a reclassification, according to the terms of the agreement, of the group 3s' work in suit.

Vacated and remanded.

HAYNSWORTH, Chief Judge (dissenting):

I would affirm dismissal of this complaint for the arbitrators specifically limited their award to a ninety-day period preceding the filing of the grievance. The company has paid that award, and there appear to be live issues as to the substantive rights and liabilities of the parties under the collective bargaining agreement which ought to be resolved under the provisions of that agreement by a board of arbitration and not by the court.

Article IV, Section 1 of the agreement clearly gives the employer the right to create new jobs and to set job rates for them, subject, of course, to subsequent negotiation with the union. It was the employer who set the grade 4 job rate for the operator of the cutting machine around which this dispute is centered. Later, according to the company's contention, when it became necessary to assign a helper to the cutter-operator, the company in informal discussions with the union set up the new job of helper and baler operator as a grade 3, and this arrangement was acceptable to the union's area director. The company neglected, however, to give the union's executive committee formal written notification of it.

About a year later this grievance was filed—the union's theory being that, because of the absence of written notice to its executive committee, the grade 3 jobs had not been properly established and, since the helper-baler-operator was doing some of the things within the job description of the grade 4 cutter operator he was entitled to grade 4 pay. This led the company on October 31, 1967 to give the union's executive committee belated formal written notice of the creation of the group 3 positions.

The union's claim that the group 3's on the baler machine were entitled to be paid at group 4 rates went to arbitration at the union's request. The arbitrators generally accepted the union's theory, but they declined to consider anything that happened after the date on which the grievance was filed, and they limited the back pay award to ninety days—apparently the ninety days preceding the

filing of the grievance. On the union's petition for clarification of its award, the arbitrators explicitly refused to consider the company's letter of October 31, 1967, or its effect under Article IV Section 1 of the agreement. This, the arbitrators said, was a separate issue which would require a separate submission. Again, the arbitrators declined to give any prospective effect to their award.

The live issue, of course, is whether the written notice contained in the company's letter of October 31, 1967 was sufficient to permit the company to treat the baler operators as new jobs which it had classified as group 3's. The company's contention is that it was a sufficient curative of its earlier formal omission, while I suppose that the union would contend that it should be given no effect because of its tardiness. In any event there is an active dispute between the parties as to the meaning and interpretation of their contract in that respect, and they have bound themselves to commit such disputes to arbitration.

The court, I think, should respect the agreement to arbitrate such disputes. This court should not undertake to decide that issue, and yet the failure to mention Section 1 of Article IV in the penultimate paragraph of the majority opinion may lead to a construction that the majority has decided the issue without even discussing it.

Nor should the District Court be required to hold a hearing. If something happened on October 31, 1967, or any other date, which would affect the presumptive right of these group 3's to group 4 pay, that is a matter for the arbitrators.

Labor relations can be conducted very satisfactorily when written agreements are respected and reasonably enforced. When they contain arbitration agreements, both respect and reasonable enforcement require that the courts restrict themselves to enforcement of arbitration awards, and that they do not undertake initially to decide live controversies or issue decrees which may be regarded by arbitrators as foreclosing their performance of their adjudicatory function.

Since everyone agrees that the company has strictly complied with the award, and since the arbitrators declined to pass on this issue on the ground that it would require a new submission, I think the District Judge properly dismissed this complaint, leaving the parties to the contractual remedies for which they bargained.

## OPINION AND ORDER ON PETITION FOR REHEARING

ALBERT V. BRYAN, Circuit Judge:

On consideration of appellee E. I. DuPont DeNemours and Company petition for a rehearing, the court for clarification repeats that "arbitrators award" referred to in the penultimate paragraph of the opinion means the arbitrators' finding that on the date of the filing of the grievance—July 21, 1967—the 3s were entitled to the pay of 4s, and that the 3s should be paid at that rate from July 21, 1967 until the occurrence of one of the events thereafter mentioned in the paragraph. In all other respects the original opinion is reaffirmed.

The petition for rehearing is denied. Chief Judge HAYNSWORTH asks to be recorded as still in dissent.